O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| ULYSSES ABURTO,<br><br>    Plaintiff,<br><br>v.<br><br>VERIZON CALIFORNIA, INC.,<br><br>    Defendant.<br>_____ | Case No. CV 11-03683-ODW (VBKx)<br><br>Order **DENYING** Plaintiff's Motion for Class Certification [44] [Filed 08/23/11] |

## I.   INTRODUCTION

Pending before the Court is Plaintiff, Ulysses Aburto's ("Plaintiff"), Motion for Class Certification. (Dkt. No. 44.) Defendant, Verizon California, Inc. ("Defendant" or "Verizon"), filed an Opposition on September 2, 2011, to which Plaintiff filed a Reply on September 9, 2011. (Dkt. Nos. 48, 55.) Having considered the papers filed in support of and in opposition to the instant Motion, the Court deems the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; L.R. 7-15. For the following reasons, Plaintiff's Motion is **DENIED**.

## II.   FACTUAL BACKGROUND

Verizon's California FiOS workgroup ("FiOS workgroup") is composed of over 680 individuals, who install and repair the company's network of fiber-optic ("FiOS") cables in connection with its telephone, Internet, and television/video services. (FAC ¶ 2; Solis Depo. 10:8-13:17; Aburto 172: 7-9.) The FiOS workgroup is led by one Director and six Second Level Area Managers, who oversee geographic Districts. (Solis Depo.

54:14-56:1.)  The FiOS workgroup is comprised of seventeen "Yards" and employs approximately thirty five First Level Managers ("FLMs"), who oversee the Yards. (Aburto Depo., Ex. 50.)  Each Yard also employs technicians, who install and service the fiber-optic cables and whose work is measured by computerized statistics referred to as "metrics." (Aburto Depo. 42:14-43:13; Exh. 1.)  There are over 635 technicians in the FiOS workgroup.

Verizon hired Plaintiff as a Technician III in 1999.  (FAC ¶ 6; Aburto Depo. 64:2-4.)  Thereafter, Plaintiff was promoted several times: first, in June 2000 to the position of Equipment Maintainer; second, in March 2003 to the position of Central Office Equipment Maintainer; and finally, in June 2005 to the position of FLM.  (*Id.*)  In his position as FLM of the San Bernanrdino Yard, Plaintiff managed up to thirty technicians and, for most of his career, was the only FLM at this location.  (Aburto Depo.174:8-176:8; 176:18-19.)

The gravamen of Plaintiff's Complaint is that he, along with all FLMs were "unlawfully classified as exempt from California overtime laws." (Mot. at 2.)  As a result of this grievance, Plaintiff now moves the Court to certify a class, currently consisting of only sixty-four members, of "all those individuals employed by Defendant Verizon California Inc. . . . in California who worked as [FLMs] in the Verizon FiOS Group at any time during the period between January 14, 2007 to July 6, 2011 . . . ." (Mot. at 1.) Plaintiff only seeks class certification with respect to his first three claims for: (1) unfair competition in violation of California Business and Professions Code section 17200; (2) failure to pay overtime compensation in violation of California Labor Code sections 510, 515.5, 551, 552, 1194, and 1198; and (3) failure to provide accurate itemized statements in violation of California Labor Code section 226.  (*Id.*)  Plaintiff does not seek class certification with respect to his fourth claim for failure to pay overtime compensation in violation of 29 U.S.C. § 201 or his fifth claim under California Labor Code section 2678. (*Id.*)

## III. LEGAL STANDARD

"The class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'" *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2550 (2011) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700–01 (1979)). "In order to justify a departure from that rule, 'a class representative must be part of the class and possess the same interest and suffer the same injury as the class members.'" *Id.* (quoting *E. Tex. Motor Freight Sys., Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977)). "Rule 23(a) ensures that the named plaintiffs are appropriate representatives of the class whose claims they wish to litigate. The Rule's four requirements—numerosity, commonality, typicality, and adequate representation—'effectively limit the class claims to those fairly encompassed by the named plaintiff's claims.'" *Id.* (quoting *Gen. Telephone Co. of Sw. v. Falcon*, 457 U.S. 147, 156 (1982)). Under Rule 23(a), the party seeking certification must demonstrate that:

> (1) the class is so numerous that joinder of all members is impracticable,
> (2) there are questions of law or fact common to the class,
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and
> (4) the representative parties will fairly and adequately protect the interests of the class.

*Id.* at 2548.

The proposed class must also satisfy at least one of the three requirements listed in Rule 23(b). *Id.* Here, Plaintiff relies solely on Rule 23(b)(3), which states that a class may be maintained where "questions of law or fact common to class members predominate over any questions affecting only individual members," and a class action would be "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

Invoking these provisions, Plaintiff moves the Court to certify a class of "all those individuals employed by Defendant Verizon California Inc. . . . in California who worked as [FLMs] in the Verizon FiOS Group at any time during the period between January 14, 2007 to July 6, 2011 . . . ." (Mot. at 1.) To show that class certification is appropriate, Plaintiff bears the burden to demonstrate that each of the elements under Rule 23(a),

3

along with one component of Rule 23(b), has been satisfied. *Conn. Retirement Plans & Trust Funds v. Amgen Inc.*, 660 F.3d 1170, 1175 (9th Cir. 2011). In that regard, "Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc." *Dukes*, 131 S.Ct. at 2551.

"When considering class certification under Rule 23, district courts are not only at liberty to, but must perform 'a rigorous analysis [to ensure] that the prerequisites of Rule 23(a) have been satisfied.'" *Ellis*, 657 F.3d at 980 (quoting *Dukes*, 131 S.Ct. at 2551). In many cases, "that 'rigorous analysis' will entail some overlap with the merits of the plaintiff's underlying claim. That cannot be helped." *Dukes*, 131 S.Ct. at 2551. When resolving such factual disputes in the context of a motion for class certification, district courts must consider "the persuasiveness of the evidence presented." *Ellis*, 657 F.3d at 982 (finding that the district court "confused the *Daubert* standard it correctly applied to [the defendant's] motions to strike with the 'rigorous analysis' standard to be applied when analyzing commonality" because "[i]nstead of judging the persuasiveness of the evidence presented, the district court seemed to end its analysis of the plaintiffs' evidence after determining such evidence was merely admissible").

Ultimately, however, the decision to certify a class is left to the discretion of the district court. *Nguyen v. Baxter Healthcare Corp.*, No. SACV 10-01436–CJC (SSx), 2011 WL 4975027, at *2 (C.D. Cal. Aug. 26, 2011) (citing *Desai v. Deutsche Bank Secs. Ltd.*, 573 F.3d 931, 937 (9th Cir. 2009); *Dukes v. Wal-Mart Stores, Inc.*, 603 F.3d 571, 594 (9th Cir. 2010)) Against this backdrop, the Court examines Plaintiff's showing on each of the requisite prongs.

## IV. DISCUSSION

Plaintiff contends that all the FLMs "were required to and did perform the same job duties" and that the alleged violations of California overtime laws resulted from Defendant's "uniform and centralized corporate policy governing [FLMs]." (Mot. at 2.) In support of these contentions, Plaintiff submits the following evidence: (1) the

declaration of Plaintiff's expert, Robert L. Burnet, a former Verizon Communications, Inc. Division Staff Manager – Human Resources/Labor Relations, (Dkt. No. 44-3); (2) the thirteen declarations and twenty-four questionnaire responses of twenty-four of the sixty-four class members, (Dkt. Nos. 44-4 – 44-7); and (3) the deposition testimony of Plaintiff's and Verizon's corporate designee, (Dkt. Nos. 44-4 – 44-7).[1]

Conversely, Verizon asserts that the FLMs "perform a varying number of job duties, for varying times and in varying ways" and that "[k]nowing how one [First Level Manager] performed his/her job does not enable us to predict how any other [First Level Manager] performed his/her job." (Opp'n at 2.) In support of these contentions, Verizon submits the following evidence: (1) the Declaration of Defendant's expert, Christina Banks, a PhD of Lamorinda Consulting Group, (Dkt. No. 50); and (2) Declarations of current and former FLMs, Area Managers, and technicians, (Dkt. No. 52).

Similar to *Wal-Mart Inc. v. Dukes*, "the crux of this case is commonality." 131 S. Ct. at 2550. Rule 23(a)(2) requires Plaintiff to demonstrate that "there are questions of

---

[1] The parties make various evidentiary objections to the proffered evidence. Specifically, Verizon disputes the admissibility of portions of the FLMs' declarations submitted as Exhibits 2-11 and 23-26 to the Bhowmik Declaration; the unsigned and unsworn surveys submitted as Exhibit 13 to the Bhowmik Declaration; and deposition exhibits, excerpts from manuals, and other purportedly unauthenticated documents submitted as Exhibits 14, 16, 17, 18, 20, 21, and 22 to the Bhowmik Declaration. (Dkt. No. 48-5.) Additionally, Defendant generally objects to the Brunet declaration on the grounds that Burnet is not qualified as an expert, that his opinions on legal issues are inadmissible, that his testimony is irrelevant, and that the report does not comply with Local Rule 11-3. (Dkt. No. 48-4.) Plaintiff objects to the Banks declaration, on the grounds that it contains impermissible legal conclusions. (Dkt. No. 56.)

At the class certification stage, "the court makes no findings of fact and announces no ultimate conclusions on Plaintiffs' claims." *Alonzo v. Maximus, Inc.*, 275 F.R.D. 513, 519 (C.D. Cal. 2011) (quoting *Mazza v. Am. Honda Motor Co.*, 254 F.R.D. 610, 616 (C.D. Cal. 2008)). "[T]he court may consider evidence that may not be admissible at trial,' and a 'district court may certify a class without supporting evidence." *Id.* (citations ommitted). "Rule 23 gives neither party the right to turn the certification decision into a trial" or "bootstrap[ ] a trial or summary judgment motion into the certification stage." *Id.* (quoting *Dukes v. Wal-Mart Stores, Inc.*, 603 F.3d 571, 591 (9th Cir. 2010)). "The court need not address the ultimate admissibility of the parties' proffered exhibits, documents and testimony at this stage, and may consider them where necessary for resolution of the [Motion for Class Certification]." *Id.* (citing *Mazza*, 254 F.R.D. at 616. Moreover, within its discretion and pursuant to its duty to conduct a "rigorous analysis," the district court is charged with "judging the persuasiveness of the evidence presented." *Ellis*, 657 F.3d at 982.

In balancing these somewhat competing directives – to conduct a "rigorous analysis" without holding a "mini-trial" – the Court notes that the parties' objections generally attack the admissibility of the proffered evidence and/or the qualifications of the experts. Because the Court need not address the admissibility of evidence at the class certification stage and discusses the persuasiveness of the experts' testimony below, the parties' objections are OVERRULED to the extent the Court considers the evidence in the context of this Order.

law or fact common to the class." "The requirements of Rule 23(a)(2) have 'been construed permissively,' and '[a]ll questions of fact and law need not be common to satisfy the rule.'" *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 981 (9th Cir. 2011) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998)). Indeed, "for purposes of Rule 23(a)(2)[,] '[e]ven a single [common] question' will do[.]" *Dukes*, 131 S. Ct. at 2556 (quoting Richard A. Nagareda, *The Preexistence Principle and the Structure of the Class Action*, 103 Colum. L. Rev. 149, 176 n.110 (2003)).

This does not mean, however, "merely that [the class members] have all suffered a violation of the same provision of law." *Dukes*, 131 S. Ct. at 2551. Rather, this entails a showing that the class members "'have suffered the same injury.'" *Id.* (quoting *Falcon*, 457 U.S. at 157). In this regard, the class members'

> claims must depend upon a common contention . . . . That common contention, moreover, must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.

*Id.* This "language is easy to misread, since '[a]ny competently crafted class complaint literally raises common questions.'" *Dukes*, 131 S. Ct. at 2551 (quoting Richard A. Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U. L. Rev. 97, 131–32 (2009)).

> "What matters to class certification . . . is not the raising of common 'questions'—even in droves—but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation. Dissimilarities within the proposed class are what have the potential to impede the generation of common answers."

*Id.* (quoting Nagareda, *Class Certification*, *supra*, at 132).

Dissimilarities should not be considered "to determine (as Rule 23(b)(3) requires) whether common questions predominate, but . . . to determine (as Rule 23(a)(2) requires) whether there is '[e]ven a single [common] question.'" *Id.*

Here, Plaintiff asserts that "the facts in this case raise the predominant, common, liability question of whether FLMs were unlawfully classified as exempt from California overtime laws." (Mot. at 2.) Plaintiff contends that resolution of this question is "based on the exact same facts for all members of the Class" because: (1) all FLMs were

classified as exempt; (2) all FLMs performed the same job duties; (3) the job duties were all clerical; and (4) Verizon's restrictions on FLMs precluded "any exercise of independent judgment or discretion." (*Id.*)  This inquiry must be resolved by examining the actual work performed by the employees.  *See* Cal. Code Regs. tit. 8 § 11040(1)(A)(1)(e) ("The work actually performed by the employee during the course of the workweek must, first and foremost, be examined and the amount of time the employee spends on such work, together with the employer's realistic expectations and the realistic requirements of the job, shall be considered in determining whether the employee satisfies this requirement.").  Upon examining the evidence submitted regarding the potential plaintiffs' actual work, the Court disagrees with Plaintiff's contention that the common question can be resolved based on the same facts.

Assuming *arguendo* that Verizon had a centralized policy governing FLMs – a question the Court need not resolve at this stage of the litigation – whether Verizon unlawfully classified the FLMs as exempt is an individualized inquiry involving facts unique to each potential plaintiff.  *See Marlo v. United Parcel Service, Inc.*, 639 F.3d 942, 948 (9th Cir. 2011) ("[A] blanket exemption policy "'does not eliminate the need to make a factual determination as to whether class members are actually performing similar duties.'"  Specifically, the existence of a policy classifying [FLMs] as exempt from overtime-pay requirements does not necessarily establish that [FLMs] were misclassified, because the policy may have accurately classified some employees and misclassified others.") (citations omitted)).  The crux of the inquiry, therefore, depends on the reason or reasons for classifying the FLMs as exempt. Plaintiff must establish that the reasons were uniform or, at least, significantly related, for "[w]ithout some glue holding the alleged reasons for all those decisions together, it will be impossible to say that examination of all the class members' claims for relief will produce a common answer to the crucial question *why was I disfavored*." *See Dukes*, 131 S. Ct. at 2552.  The reasons, however, necessarily vary with respect to each potential plaintiff.  Contrary to Plaintiff's assertion that "liability will depend on class-wide proof not individual issues[,]" the evidence proffered at this stage of the litigation reflects that the FLMs had

7

different job duties and carried out these duties in a variety of ways based on, *inter alia*, the location of their respective Yards, the Yards' respective sizes, number of employees assigned to each Yard, the experience level of those employees, the type of work actually performed in the field, and business volume for each Yard.  In this respect, the parties submit numerous conflicting declarations, along with conflicting expert reports.

Plaintiff asserts that FLMs act "as low-level functionaries whose job was to relay information back and forth between Verizon's technicians and Verizon's systems." (Mot. at 4.)  In support, Plaintiff cites excerpts of twelve declarations of current and former FLMs, who generally state that their job duties are routine, determined by upper management, and mostly consist of reporting tracking and monitoring activities.  (Mot. at 4-5 n.6.)  Plaintiff maintains that the FLMs "d[o] not assign any of the work that was performed by the technicians, but instead uniformly perform[] the clerical functions of observing and reporting whether the metrics are being achieved by the technicians." (Mot. at 6, *see also* Mot. at 9.)  Plaintiff avers that the metrics "control" the FLMs' work. (Mot. at 8.)  Plaintiff further asserts that the FLMs' opportunity to exercise any discretion is "extinguished" because they were required to follow standardized procedures and are "scrutinized and tightly controlled by Verizon management." (Mot. at 10-12.)  Finally, Plaintiff contends that FLMs lack the authority to hire, fire, or discipline technicians. (Mot. at 12-13.)  Plaintiff's expert, Brunet, concludes "[t]he prime functions performed by these [FLMs] included observing operation and inputting data . . . , which were clerical functions." (Mot. at 4-5.)

Conversely, Verizon maintains that FLMs do not perform merely clerical functions.  (Opp'n at 4-6.)  Rather, Verizon contends that FLMs' job duties vary significantly from person to person.  In support, Verizon cites excerpts of numerous declarations, including Plaintiff's, that suggest that FLMs performed such tasks as interviewing job applicants, making hiring recommendations, monitoring and adjusting technicians' work schedules, addressing customer compliant escalations, directing technicians' work in the field, assessing and appraising technicians' work, coaching and training technicians, disciplining technicians, representing Verizon and participating in

union grievance hearings, and providing recommendations regarding technician terminations. (*Id.*) Additionally, Verizon submits a significant amount of evidence suggesting that each LM carried out his or her job duties in differing ways based on, *inter alia*, the LM's expectations, styles, and practices; the LM's experience, initiative, and preferences; whether the LM was assigned special projects; whether the LM was solely repsonsible for an entire Yard or shared duties with other FLMs; the experience and performance levels of the technicians whom the LM supervised; the location and business composition of the Yard, *i.e.*, whether it serviced primarily residential or commercial customers; and unexpected events. (Opp'n at 6-8.)

Ultimately, in the face of this competing evidence, the Court agrees with Verizon's expert when she states, "[k]nowing how one Local Manager performed his/her job does not enable us to predict how any other Local Manager performed his/her job." (Banks Decl. ¶ 84.) The Court simply cannot conclude that all FLMs performed the same job duties, that the job duties were all clerical, or that Verizon's restrictions on FLMs precluded "any exercise of independent judgment or discretion." Consequently, the question of whether all FLMs were improperly classified as exempt will depend on answers unique to each potential plaintiff.

In sum, there is no evidence that the entire proposed class was missclassified as exempt. Rather, the evidence shows that, at best, some prospective class members may have been misclassified and others may have been properly classified. Plaintiff fails to carry his burden to establish that this question can be resolved by answers common to the class and, thus, this case is not capable of classwide resolution. *See Ellis*, 657 F.3d at 983 ("If there is no evidence that the entire class was subject to a discriminatory practice, there is no question common to the class.").[2]

---

[2] Because Plaintiff fails to establish commonality, the Court need not address the other three requirements under Rule 23(a). Moreover, because Plaintiff fails to establish even one common question, he necessarily fails to establish that common questions predominate under Rule 23(b)(3). *See Conn. Retirement Plans &Trust Funds*, 660 F.3d at 1175 (noting that the party seeking class certification "bears the burden of demonstrating that [each of] the requirements of Rules 23(a) and (b) are met.").

## V. CONCLUSION

In light of the foregoing, Plaintiff's Motion for Class Certification is **DENIED**.

**IT IS SO ORDERED.**

January 3, 2012

_____

HON. OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE